**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **PEACH BLOSSOM DEVELOPMENT CO., INC.**, <br><br>  Plaintiff, <br><br> v. <br><br> **THE FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver of PIEDMONT COMMUNITY BANK, and THE FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of MOUNTAIN HERITAGE BANK,** <br><br>  Defendants. | Civil Action No. 5:12-CV-394 (HL) |

## ORDER

This case is before the Court on Defendants' Motion for Judgment on the Pleadings, or, in the Alternative, for Summary Judgment. (Doc. 48). After reviewing the pleadings, briefs, affidavits, and other evidentiary materials presented, and determining that there is no genuine dispute of the material facts, the Court finds that Defendants are entitled to judgment as a matter of law and grants Defendants' motion.

## I.   BACKGROUND

Plaintiff Peach Blossom Development Co., Inc. ("Peach Blossom") is a development company based in Warner Robins, Georgia. (Doc. 1). On or about

September 15, 2007, Peach Blossom borrowed $669,415.75 from Piedmont Community Bank ("PCB") to purchase real property located at 1131 Houston Lake Road in Warner Robins. (Doc. 1-1, ¶¶ 5, 7). On March 6, 2008, Peach Blossom and PCB signed an Acquisition and Development loan, whereby PCB agreed to loan Peach Blossom $3,517,050.00 to pay off the purchase loan and to fund the development of the property. (Doc. 1-1, ¶ 9; DSOMF, ¶ 2).[1]

In the spring of 2009, PCB ceased funding the project. (Doc. 1-1, ¶ 14; DSOMF, ¶ 2). Peach Blossom alleges that in March 2009, PCB notified Peach Blossom for the first time of Mountain Heritage Bank's ("MHB") involvement as a participant in the loan. (Doc. 1-1, ¶ 15). PCB then informed Peach Blossom that MHB was no longer willing to continue funding the project and that without a participating partner PCB, likewise, was restricted by its own policies from loaning Peach Blossom the total sum. (Doc. 1-1, ¶¶ 15, 16). PCB requested that Peach Blossom devise a stabilization budget to allow the project to continue and to provide PCB time to identify a new funding partner. (Doc. 1-1, ¶ 17).

Then, on March 3, 2010, PCB presented Peach Blossom with a loan renewal, which Peach Blossom signed, reducing PCB's loan obligation from $3,517,000.00 to $1,349,000.00. (Doc. 1-1, ¶ 22; DSOMF, ¶ 2). In the fall of 2010, Peach Blossom defaulted on the loan, and PCB initiated foreclosure

---

[1] "DSOMF" refers to Defendants' Statement of Material Facts. Plaintiff has admitted all allegations set forth in Defendants' statement. (Doc. 51, p. 2).

2

proceedings against Peach Blossom, ultimately selling the property held as collateral. (Doc. 1-1, ¶ 23; DSOMF, ¶ 2).

On March 25, 2011, Peach Blossom filed suit against PCB in the Superior Court of Houston County, Georgia. (Doc. 1-1; DSOMF, ¶ 1). Peach Blossom pled causes of action for breach of contract/promissory estoppel, breach of the duty of good faith and fair dealing, fraud, violations of the Georgia RICO Act, and wrongful foreclosure. (Doc. 1-1; DSOMF, ¶ 2).

Soon thereafter, the Georgia Department of Banking and Finance closed both MHB and PCB and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver ("FDIC-R PCB" and "FDIC-R MHB"). (Doc. 1, ¶¶ 2, 3; DSOMF, ¶¶ 3, 4). MHB was closed on June 24, 2011. (DSOMF, ¶ 3). PCB was closed on October 14, 2011. (DSOMF, ¶ 4). Effective October 14, 2011, State Bank and Trust Company ("State Bank") and FDIC-R PCB entered into a Purchase and Assumption Agreement pursuant to which FDIC-R PCB transferred and assigned to State Bank certain real property, including that formerly owned by Peach Blossom. (DSOMF, ¶ 5). State Bank also assumed all "asset-related defensive litigation liabilities" related to that asset. (DSOMF, ¶ 5). Accordingly, on January 13, 2012, State Bank was substituted as defendant for PCB in the state court action. (DSOMF, ¶ 7).

State Bank filed a motion for summary judgment in the state court case on July 10, 2012. (DSOMF, ¶ 8). Peach Blossom responded to that motion on August 24, 2012. (DSOMF, ¶ 8). A hearing was held on October 1, 2012. (DSOMF, ¶ 9). The Superior Court of Houston County granted State Bank's motion for summary judgment on October 4, 2012, finding that Peach Blossom could not recover on any of its claims and denying Peach Blossom's motion to add MHB as a defendant because there was no contractual privity between Peach Blossom and MHB. (Doc. 19-6; DSOMF, ¶ 9). Peach Blossom filed a notice of appeal that it later withdrew. (DSOMF, ¶ 10).

Meanwhile, Peach Blossom submitted a Proof of Claim to FDIC-R PCB on January 11, 2012. (Doc. 1-1; DSOMF, ¶ 6). The Proof of Claim incorporated by reference the allegations set forth in Peach Blossom's complaint filed in the state court action. (Doc. 1-1; DSOMF, ¶ 6). Peach Blossom made no additional allegations. (DSOMF ¶ 6). FDIC-R PCB denied Peach Blossom's claim by Notice of Disallowance of Claim dated August 3, 2012. (Doc. 1-2). FDIC-R PCB determined that Peach Blossom failed to prove its claims against PCB to the satisfaction of the receiver and advised Peach Blossom of its right to seek judicial review within 60 days of notice of the disallowance. (Doc. 1-2).

Peach Blossom then filed the present lawsuit on October 2, 2012, again alleging that PCB extended $3,517,000.00 in an acquisition and development

loan[2] to Peach Blossom that PCB was unable to finance without the participation of MHB. (DSOMF, ¶ 11). Peach Blossom claims that as a result of the "financial meltdown", PCB requested that Peach Blossom "slow down" development of the project and present a stabilization budget, which Peach Blossom agreed to do, only drawing down $1 million of the loan. (Doc. 1, ¶¶ 15-18; DSOMF, ¶ 11). Peach Blossom alleges that PCB is liable for refusing to allow Peach Blossom to draw the full amount of the loan and to complete the development project and that MHB is liable for failing to fund its participation interest, leaving PCB unable to finance the loan. (Doc. 1, ¶ 19; DSOMF, ¶ 11). Peach Blossom raises causes of action for recoupment, gross negligence, fraud, and the FDIC's disallowance of its claim. (DSOMF, ¶ 12).

Despite knowing that both PCB and MHB were in receivership, Peach Blossom named the FDIC as a party to this action only in relation to PCB. (Doc. 1, ¶¶ 2, 3). Peach Blossom named MHB as a defendant and served the bank through its successor-in-interest First American Bank and Trust Company. The FDIC filed a Notice of Appointment and Substitution on April 4, 2013, thereby becoming a party to the suit as the receiver for MHB. (Doc. 22). On May 28, 2013, FDIC-R MHB sent Peach Blossom a notice that the FDIC-R MHB

---

[2] Plaintiff refers to this transaction as a loan. While the pleadings and supporting documents contained in this case do not characterize the loan in any other fashion, it appears to the court that PCB extended Peach Blossom a line of credit for $3,517,000.00, and that Peach Blossom only drew down $1,349,000.00.

discovered that Peach Blossom might have a claim against MHB. (Doc. 26-2, p. 6; DSOMF ¶ 13). This notice indicates that MHB was closed June 24, 2011. The notice further explains that the receiver published notice of the bank's closure in one or more newspapers and that the deadline to file any claims against the bank was September 28, 2011. Acknowledging that the claims bar date had already passed, the notice also points out that the FDIC-R may consider claims filed after the claims bar date if: "(1) the claimant did not receive notice of the appointment of the Receiver in time to file a claim, and (2) the claim is filed in time to permit payment of the claim (the 'late-filed claim exception'). 12 U.S.C. 1821(d)(5)(C)(ii)." (Doc. 26-2, p. 7). The letter then specifically provides,

> Because the Claims Bar Date has passed in this case, you must prove to the Receiver's satisfaction that you did not receive notice of the appointment of the Receiver in time to file a claim before the Claims Bar Date. Therefore, along with your Proof of Claim form and supporting documentation, you must prove that you lacked knowledge of the appointment of the Receiver. For example, evidence that you were on active military duty stationed overseas at the time of the appointment of the Receiver. . . . Submitting your claim no later than the Submission Deadline does not guarantee that it will be accepted as timely as the Submission Deadline does not extend the Claims Bar Date.

(Doc. 26-2, p. 7; DSOMF ¶ 13).

FDIC-R MHB moved for, and on June 27, 2013, the Court granted, a stay in the proceedings to provide Peach Blossom with the opportunity to comply with the requirements of this notice and to exhaust its administrative remedies. (Doc.

6

31; DSOMF ¶ 14). Peach Blossom submitted a Proof of Claim form to FDIC-R MHB on July 23, 2013. (Doc. 37-1; DSOMF ¶ 15). In support of its claim, Peach Blossom stated, "Mountain Heritage as a participant bank caused development to fail." (Doc. 37-1, p. 1). As further evidence, Peach Blossom attached the complaint filed in this action as well as the Proof of Claim submitted to the FDIC-R PCB. (Doc. 37-1). The Proof of Claim contained no evidence demonstrating that Peach Blossom lacked knowledge of the appointment of the Receiver, or that the claim satisfied the "late filed exception." (DSOMF ¶ 15). FDIC-R MHB denied Peach Blossom's claim on October 15, 2013, as untimely and not subject to a late filing exception. (Doc. 37-2; DSOMF ¶ 16).

## II.   SUMMARY JUDGMENT STANDARD

Defendants move for judgment on the pleadings, or in the alternative summary judgment. "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001). In ruling on the motion, "[a]ll facts alleged in the complaint must be accepted as true and viewed in the light most favorable to the nonmoving party." Scott v. Taylor, 405 F.3d 1251, 1253 (11th Cir. 2005). While there are no material facts in dispute in this case, the parties diverge on the application of the law to those facts and, in

the process, request that the Court consider matters outside the pleadings. Accordingly, the Court finds it appropriate to apply the applicable summary judgment standard. See Fed.R.Civ.P. 12(c).

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence demonstrating that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when a reasonable jury

could return a verdict for the non-moving party based on the evidence presented. Id. at 249–50.

When resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Trial Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). The court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted).

## III.   ANALYSIS

### A.   Subject Matter Jurisdiction

#### 1.   FDIC-R Mountain Heritage Bank

FDIC-R MHB alleges that this Court lacks subject matter jurisdiction over Peach Blossom's claims against MHB because Peach Blossom failed to exhaust the administrative remedies set forth in the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"). The claims bar date for any actions asserted against the failed bank was September 28, 2011. While FDIC-R MHB

9

provided Peach Blossom with the opportunity to show that it did not receive notice of the appointment of the receiver in time to file a claim and thus qualified for an exception, Peach Blossom failed to do so. The FDIC-R MHB's disallowance of Peach Blossom's claims acts as a jurisdictional bar.

FIRREA regulates the filing, determination, and payment of claims by a creditor of a failed financial institution following the appointment of a receiver. 12 U.S.C. § 1821(d). In enacting this statute, Congress anticipated "that as a receiver for failed lending entities, the [FDIC] would face numerous claims from various parties. Accordingly, it sought to reduce the volume of formal litigation that otherwise would have resulted by providing for administrative review of such claims." Stamm v. Paul, 121 F.3d 635, 639 (11th Cir. 1997). FIRREA thus provides for an exclusive and mandatory administrative process for all claims initiated against failed financial institutions. See 12 U.S.C. § 1821(d)(3)-(13).

Upon being appointed receiver, the FDIC must publish notice to creditors regarding the closing of the depository institution and provide those creditors 90 days in which to present any claims to the receiver (the "claims bar date"). 12 U.S.C. § 1821(d)(3)(B). Notice must also be mailed to any creditor shown on the institution's books. 12 U.C.S. § 1821(d)(3)(C)(i). Should the receiver later discover the name and address of a claimant not appearing on the institution's books, the receiver shall mail a similar notice within 30 days of such discovery. 12 U.S.C. § 1821(d)(3)(C)(ii). Claims "filed after the date specified on the notice

. . . shall be disallowed and such disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i).

Within 180 days of receiving a claim, the receiver shall determine whether to allow or disallow the claim and notify the claimant of that decision. 12 U.S.C. § 1821(d)(5)(A). The receiver "may disallow any portion of any claim by a creditor . . . which is not proved to the satisfaction of the receiver." 12 U.S.C. § 1821(d)(5)(D). Only upon the completion of this administrative process does a claimant have the right to seek judicial review. 12 U.S.C. § 1821(d)(13)(D); Paul v. FDIC, 91 F.3d 110, 111 (11th Cir. 1996). "The Eleventh Circuit has construed this provision to require administrative exhaustion, and failure to exhaust an administrative claim deprives this court of subject matter jurisdiction." Ray v. FDIC, 2014 U.S. Dist. LEXIS 81465, at *5 (M.D. Ala. May 1, 2014) (citing Damiano v. FDIC, 104 F.3d 328, 333 (11th Cir. 1997); Stamm, 121 F.3d at 642). The exhaustion requirements apply to both pre-receivership and post-receivership claims, which include "claims related to conduct by the failed financial institution that the aggrieved party neglects to assert until after the [FDIC] assumes control over the lending entity." Stamm, 121 F.3d at 639; see also Damiano, 104 F.3d at 333 ("For post-receivership claims, the court has no subject matter jurisdiction unless the claimant has exhausted the administrative remedies.").

Exceptions to FIRREA's statutory bar do exist. <u>Haygood v. Cmty. & S. Bank</u>, 2012 U.S. Dist. LEXIS 180826, at * 16. The first exception arises where the FDIC fails to publish the proper notice, under which circumstances the claims process is not initiated, and "the time period for filing clams only begins to run after the receiver has properly complied with the notice requirements." <u>Id</u>. at *17 (quoting <u>FIDC v. Lacentra Trucking, Inc.</u>, 157 F.3d 1292, 1297 n.2 (11th Cir. 1998). FIRREA also permits consideration of a claim filed after the claims bar date if (1) there is evidence that the claimant did not receive notice regarding the appointment of the receiver in time to file a timely claim; and (2) the claim is filed in time to permit payment. 12 U.S.C. § 1821(d)(5)(C)(ii).   "The discretion conferred by § 1821(d)(5)(C)(ii) is narrowly drawn, and the FDIC loses this discretion after the claimant has notice of its status as receiver." <u>Paul</u>, 91 F.3d at 112. Further, courts that have granted exceptions to the late filing rule "have done so only when the claims arose after the bar date had elapsed." <u>Haygood</u>, 2012 U.S. Dist. LEXIS 180826 at *18.

The Georgia Department of Banking and Finance closed MHB on June 24, 2014, and appointed the FDIC as receiver. It is undisputed that FDIC-R published the appropriate notice of the appointment of the receiver, establishing a claims bar date of September 28, 2011. It is further undisputed that Peach Blossom's claims against MHB arose prior to the expiration of the claims bar date and that Peach Blossom did not submit a timely Proof of Claim to FDIC-R MHB.

12

Accordingly, the issue now before the Court is whether Peach Blossom has established a lack of knowledge of the appointment of the receiver in order to qualify for the narrow late filing exception of the FIRREA and to avoid dismissal of its claims for failing to avail itself properly of the administrative process.

Peach Blossom has not presented adequate evidence that it lacked knowledge of the appointment of the FDIC as receiver for MHB. Peach Blossom attempts to argue that that the FDIC-R MHB's notice letter of May 28, 2013, which identified Peach Blossom as a potential claimant and provided Peach Blossom with the opportunity to prove that Peach Blossom did not receive notice of the appointment of the FDIC-R in time to file a claim, is proof positive that Peach Blossom was unaware of the receivership. The evidence of record belies this contention. Peach Blossom's Complaint, filed on October 2, 2012, reveals that the development company knew about the receivership in advance of this litigation and well before the FDIC-R MHB sent the notice letter. (Doc. 1, ¶ 3). Despite being provided the opportunity both in the course of the administrative claims process and in the briefing of the pending motion, Peach Blossom has made no effort to provide any convincing information concerning when it learned about the involvement of a receiver in relation to MHB or evidencing an absence of knowledge of the receivership prior to the May 28, 2013 letter from the FDIC-R. FDIC-R MHB made clear that Peach Blossom "must prove to the Receiver's satisfaction that [Peach Blossom] did not receive notice of the appointment of the

13

Receiver in time to file a claim before the Claims Bar Date," and even provided an example of circumstances under which the late-filing exception might apply, i.e., if the claimant was on active military duty and stationed overseas. (Doc. 26-2, p. 7). In response to these instructions, Peach Blossom did nothing more than attach a copy of the Complaint from this case in addition to the Proof of Claim Peach Blossom submitted to the FDIC-R PCB.

Peach Blossom makes an indirect due process argument, claiming that it did not receive notice that MHB was in receivership and arguing that the May 28, 2013 notice letter is evidence that FDIC-R MHB knew that Peach Blossom did have notice of the receivership in time to file a claim before the claims bar date. The FDIC as receiver has the statutory duty of mailing a copy of the published notice explaining the administrative claims process and setting out the claims bar date to *known* creditors. 12 U.S.C. § 1821(d)(3)(B) and (C) (emphasis added).[3] Failure to satisfy the notice requirements "raises serious constitutional concerns regarding the sufficiency of notice under the Due Process Clause." Damiano, 104 F.3d at 335 (citing Freeman v. FDIC, 312 U.S. App. D.C. 324, 56 F.3d 1394, 1403 (D.C. Cir. 1995)). However, when addressing whether a due process issue exists, courts may consider whether a plaintiff had sufficient knowledge to be placed on inquiry notice of the claims bar date. See Haygood, 2012 U.S. Dist.

---

[3] Peach Blossom was not a known creditor of FDIC-R MHB until the filing of this lawsuit.

180826 at *19 (citing Elmco Prop., Inc. v. Second Nat'l Sav. Ass'n, 94 F.3d 914, 921 (4th Cir. 1996) (noting that courts should consider "if . . . [plaintiff] actually knew enough about the situation to place [him] on 'inquiry notice' as to the details of the administrative process) and Intercontinental Travel Mktg., Inc. v. FDIC, 45 F.3d 1278, 12 86 (9th Cir. 1994) (finding claimant with actual notice of receivership was on "inquiry notice of the claims bar date")); see also FDIC v. Estrada-Rivera, 813 F. Supp. 2d 265, 268 (D.P.R. 2011) ("Failure to mail the notice, however, will not exempt the claimant from exhausting the administrative process. . . . As long as the claimants are aware of the appointment of the receiver, through personal knowledge or through a representative, the requirements of 12 U.S.C. § 1821(d)(3)(B) will be satisfied.") (internal quotations and citations omitted).

Here, there is ample evidence that Peach Blossom at the very least had inquiry notice of the receivership. Peach Blossom knew as early as March 25, 2011, when Peach Blossom filed its first lawsuit against PCB, that MHB was involved with the loan extended to Peach Blossom by PCB. While that litigation commenced prior to the appointment of the FDIC as receiver for either of the banks involved in this case, the evidence of record reflects multiple opportunities for Peach Blossom to learn about the FDIC's involvement with MHB, despite any geographical impediment claimed by Peach Blossom.

At the time PCB went into receivership, Peach Blossom and PCB were already entrenched in litigation. Accordingly, Peach Blossom was a known creditor of PCB and received written notification of the appointment of the FDIC as receiver and of the claims bar date. Peach Blossom availed itself of the administrative process for its claims against FDIC-R PCB and was aware of the requirement that once the FDIC assumed the role of receiver a limited window existed in which to submit a claim. Peach Blossom has failed to provide proof of when or how it later learned that MHB was also in receivership. However, the evidence is clear that Peach Blossom knew that MHB was involved in the underlying loan and that Peach Blossom discovered at some point prior to the filing of the this lawsuit that the failed bank entered receivership. The evidence also is clear that Peach Blossom understood the administrative claims process and that it neglected to initiate the administrative proceedings at any point after learning of the appointment of a receiver for MHB. There was sufficient evidence available to Peach Blossom to learn of the receivership in a timely fashion even without receiving direct notice or, at the very least, to provide a more detailed accounting of the delay in filing a notice of claim to provide the FDIC-R MHB the opportunity to adjudge whether there was some reasonable impediment to Peach Blossom finding out about receivership. Peach Blossom's claims that it was unaware of the receivership prior to the May 28, 2013, notice are unpersuasive

and disingenuous in light of the overwhelming evidence and Peach Blossom's own admissions.

The Court therefore finds that Peach Blossom did not file a timely notice of claim and thus failed to exhaust the available administrative remedies. Accordingly, the Court must dismiss Peach Blossom's claims against FDIC-R MHB for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(h)(3).

### 2.    Gross Negligence Claims against FDIC

The FDIC moves for judgment as a matter of law as to Count II of Peach Blossom's Complaint, in which Peach Blossom alleges that the FDIC's gross negligence in regulating PCB and MHB was a direct and proximate cause of Peach Blossom's loss, for lack of subject matter jurisdiction. Peach Blossom offered no response to this this argument. Accordingly, the Court views this claim as abandoned. See Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned, and affirming grant of summary judgment, as to claim presented in complaint but not raised until supplemental reply brief); Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.' There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate

arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (internal citations omitted).

### B.   Res Judicata

Defendants next move for summary judgment on the basis of res judicata. A party may successfully raise the defense of res judicata in a summary judgment motion "by introducing sufficient information into the record to allow the court to judge the validity of the res judicata defense." Jones v. Gann, 703 F.2d 513, 515 (11th Cir. 1983) (citing Concordia v. Bendekovic, 693 F.2d 1073, 1075 (11th Cir. 1982). The Court has already determined that it lacks subject matter jurisdiction over Peach Blossom's claims against FDIC-R MHB. Therefore, the Court will only examine whether Peach Blossom's claims against FDIC-R PCB are barred by the doctrine of res judicata.

Where, as here, a federal district court is called upon "to give res judicata effect to a state court judgment, [the court] must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." Kizzire v. Baptist Health System, Inc., 441 F.3d 1306, 1308 (11th Cir. 2006) (quoting Amey, Inc. v. Gulf Abstract & Tile, Inc., 758 F.3d 1486, 1509 (11th Cir. 1985). In this case, the court therefore must apply Georgia preclusion law.

Generally, "when addressing a claim of res judicata, a court must examine the record to determine whether the issue has been actually or could have been

litigated and to ascertain whether there has been a final judgment in the other proceeding." Jones, 703 F.2d at 515. Under Georgia law,

> [t[he doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action. Res judicata prevents a plaintiff from instituting a second complaint against a defendant on a claim that has already been brought, after having previously been adjudged not to be entitled to the recovery sought on that claim. Three prerequisites must be satisfied before res judicata applies – (1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction.

Karan, Inc. v. Auto-Owners Ins. Co., 280 Ga. 545, 546 (2006) (citing Waldroup v. Greene County Hosp. Auth., 265 Ga. 864, 865 (1995).

The Court notes again that Peach Blossom wholly failed to address Defendants' argument that the doctrine of res judicata bars Peach Blossom's claims against FDIC-R PCB. Peach Blossom's response only contests whether the state court proceedings initiated against PCB now prevent Peach Blossom from asserting claims against FDIC-R MHB. "In opposing a motion for summary judgment, a 'party may not rely on his pleadings to avoid judgment against him." Resolution Trust Corp., 43 F.3d at 592. It is not the Court's responsibility to formulate Peach Blossom's arguments. Id. at 599. The Court therefore finds after a review of the pleadings, and there being no opposition to the motion, that

Defendant's motion for summary judgment on Plaintiff's remaining claims against FDIC-R PCB is due to be granted.

## III.   CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion for Judgment on the Pleadings, or, in the Alternative, for Summary Judgment. (Doc. 48). The Clerk of Court is directed to enter judgment in favor of Defendants and to close this case.

**SO ORDERED**, this 17th day of December, 2014.


*s/ Hugh Lawson*_____
**HUGH LAWSON, SENIOR JUDGE**

aks